**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

VINCE RANALLI, on behalf of himself and
all others similarly situated,

          Plaintiff,

          v.

AMAZON.COM, LLC; ZAZZLE INC.;
ARENA MERCHANDISING BY AND
THROUGH AMAZON.COM, LLC;
ETSY.COM, LLC; BRAVE NEW LOOK;
and OUTDOOR RESEARCH,

          Defendants.

2:21-CV-00088-RJC

ELECTRONICALLY FILED

**JURY TRIAL DEMANDED**

**ZAZZLE INC.'S BRIEF IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS
PLAINTIFF'S COMPLAINT OR, IN THE ALTERNATIVE, RULE 56 MOTION FOR
SUMMARY JUDGMENT**

    AND NOW, comes Zazzle Inc., by and through its undersigned counsel, Marshall

Dennehey, and specifically Gregory P. Graham, Esq., and files this Brief in Support of its Rule

12(b)(6) Motion to Dismiss Plaintiff's Complaint or, in the alternative, Rule 56 Motion for

Summary Judgment.

## I.   BACKGROUND AND FACTS

    Plaintiff Vince Ranalli ("Ranalli") brings forth this class action suit following his alleged

internet purchase of a protective face mask or covering from each of the Defendants.   (*See*

*Generally*, Plaintiff's Complaint). Ranalli alleges that each of the Defendants improperly charged

and collected sales tax on the protective face masks or coverings. (Complaint, ¶¶ 12-19).   Ranalli

alleges that the imposition and collection of sales tax was improper, as the masks and coverings

were reclassified as everyday wear/clothing due to the COVID-19 pandemic by the Pennsylvania

Department of Revenue and thus exempt from Pennsylvania sales tax under 72 P.S. § 7204.

(Complaint, ¶¶ 12-19).  In addition to individual counts against each Defendant, Ranalli brings

class claims on behalf of similarly situated purchasers against each Defendant in separately defined classes. (Complaint, ¶ 21).

Ranalli's theories of liability as to all Defendants are based upon an assertion that Defendants each improperly charged him, and others, sales tax as part of their purchase of face masks or face coverings. (Complaint, ¶¶ 12-19). Ranalli alleges that this was done in violation of the Pennsylvania Tax Code sections governing the imposition and collection of sales taxes. In his allegations of fact as to all Defendants, Ranalli notes that Governor Wolf declared a disaster emergency due to COVID-19 on March 6, 2020 which was then renewed on June 3, 2020 and August 31, 2020. (Complaint, p. 3 at n. 1). Ranalli then cites to an October 30th, 2020 website posting made by the Pennsylvania Department of Revenue on the "Find Answers" portion of its website. (Complaint, p. 3 at n. 2). In response to a posted question asking whether masks and ventilators are subject to PA sales tax, the Department of Revenue answered with the following:

> No, face masks (cloth and disposable) are exempt from Pennsylvania sales tax. Prior to the COVID-19 pandemic, masks sold at retail were typically subject to Pennsylvania sales tax. However, masks (both cloth and disposable) could now be considered everyday wear/clothing as they are part of the normal attire. Generally speaking, clothing is not subject to Pennsylvania sales tax. Check the Retailer's Information Guide (REV-717) for a list of exceptions.

(Pennsylvania Department of Revenue, Masks and Ventilators - Find Answers, Pennsylvania Department of Revenue, October 30, 2020, https://revenue-pa.custhelp.com/app/answers/detail/a_id/3748/~/masks-and-ventilators).

Nowhere in the Pennsylvania Department of Revenue's answer to the question does the Department of Revenue express an intention that the espoused position was to have retroactive effect back to the March 6, 2020 date upon which Governor Wolf first declared a disaster emergency. (*Id.*). Similarly, nowhere in the referenced Retailer's Information Guide (REV-717) does it state that the answer to the question was to have retroactive effect. (*Id.*). Ranalli cites to no other statement, public notice, or decision which would indicate that the Department of

Revenue intended for the interpretation set forth in the October 30th, 2020 answer to apply to any day prior to October 30th. (*See Generally*, Complaint).

### ***Ranalli's Claims Against Zazzle Inc.***

Ranalli brings the following Counts against Zazzle:  Count II – Violations of the UTPCPL solely against Zazzle as an individual Defendant; Count VIII – Violations of the PFCEUA and UTPCPL on behalf of Plaintiff and similarly situated classes against all Defendants; Count IX – Misappropriation/Conversion on behalf of Plaintiff and similarly situated classes against all Defendants; and Count X – Unjust Enrichment on behalf of Plaintiff and similarly situated classes against all Defendants.  (Complaint, Counts II, VIII, IX, and X). Ranalli also sets forth a claim for a permanent injunction in Count XI, asking the Court to order all Defendants to cease and desist the unlawful charging of sales tax.  (Complaint, Count XI).  In pursuit of his class action claims against Zazzle, Plaintiff proposes the following class definition:

> The Zazzle, Inc. Class consists of all individuals who purchased a protective face mask or face covering from Zazzle Inc., over the internet on or after March 6, 2020, arranged for delivery into Pennsylvania and who were charged an amount or fee represented to be sales tax on that purchase.

(Complaint, ¶21, Subpart b).

Ranalli's specific claims against Zazzle stem from his purchase of a protective face mask that was advertised for $12.95. (Complaint, ¶ 51).  Ranalli alleges he was charged $1.40 in sales tax and paid a total of $14.35 for the mask.  (Complaint, ¶¶ 52-53).  Other than the description of the amount Ranalli was charged and paid, found in Paragraphs 51-53 of his Complaint, Ranalli does not include any other factual allegation describing Zazzle's alleged conduct.  (*See Generally*, Complaint). While Ranalli sets forth legal conclusions as to Zazzle's alleged actions, Ranalli's Complaint does not include any factual allegations whatsoever as to any representation made by Zazzle or what Ranalli's understanding of such a representation was at the time of purchase. (*See*

*Generally*, Complaint).  Further, Ranalli's Complaint does not include any citations to any website,

advertising, or public facing media produced by Zazzle.  (*See Generally*, Complaint).

### *Zazzle Inc.'s User Agreement and Arbitration Provision*

Ranalli fails to cite to Zazzle's User Agreement, which governs all sales from Zazzle's

website. (Zazzle Inc., User Agreement, September 9, 2020, https://www.zazzle.com/mk/policy/user_agreement, a true

and correct copy of the User Agreement found at the website is attached hereto as Exhibit "A").[1]

Section 1 of the User Agreement, titled "Acceptance of Terms" states:

**1. Acceptance of Terms:**

1.1. ZAZZLE INC. ("ZAZZLE," "US" OR "WE") ***PROVIDES ITS WEBSITES, MOBILE SITES, MARKETPLACE LISTINGS, MESSAGING FUNCTIONS, AND/OR APPS*** (i) OWNED OR OPERATED BY OR FOR ZAZZLE, OR MANAGED BY A ZAZZLE-OWNED ACCOUNT, OR (ii) ON ZAZZLE-BRANDED PAGES ON WHICH PRODUCTS ARE DISPLAYED AND POSTED FOR SALE (COLLECTIVELY, "SITE") ***TO YOU SUBJECT TO THE FOLLOWING USER AGREEMENT ("AGREEMENT").*** IF YOU DO NOT AGREE WITH ANY OF THE TERMS OF THIS AGREEMENT, DO NOT ACCESS OR OTHERWISE USE THIS SITE OR ANY INFORMATION CONTAINED ON THIS SITE. ***YOUR USE OF THIS SITE SHALL BE DEEMED TO BE YOUR (AND IF ACTING ON BEHALF OF A THIRD PARTY OR YOUR EMPLOYER, SUCH THIRD PARTY'S OR EMPLOYER'S) AGREEMENT TO ABIDE BY EACH OF THE TERMS SET FORTH BELOW...***

---

[1] This Court can consider this exhibit without converting Zazzle's Motion to Dismiss into a Motion for Summary Judgment Pursuant to Federal Rule of Civil Procedure 56.  *In re. Rockefeller Center Properties, Inc. Securities Litigation*, 184 F.3d 280, 287 (3d Cir. 1999).  Courts can consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guaranty Corp. v. White Consolidated Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  Documents which form the basis of a claim are those "integral to or explicitly relied upon in the complaint," thereby serving as a factual underpinning for plaintiff's theory of recovery. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).  Here, Ranalli's purchase of the mask from Zazzle was made pursuant to the User Agreement and Zazzle does not anticipate that Ranalli will contest the authenticity of the User Agreement.  However, even in the event that Ranalli does challenge the User Agreement's authenticity or application, this Court has the authority to treat Zazzle's Motion as one for summary judgment and dispose of it as provided by Rule 56.

(Ex. A at Section 1.1) (emphases to body text added). By purchasing the face mask from Zazzle, Ranalli agreed to abide by the terms and conditions set forth in the User Agreement. Included among them was Section 33, titled "Dispute Resolution and Release." It states:

**33. Dispute Resolution and Release**

33.1. These terms and conditions and your relationship with Zazzle shall be governed by and construed in accordance with the laws of the state of California, without resort to its conflict of law provisions. *Any dispute relating in any way to your visit to the Site or to the Products you purchase through the Site shall be submitted to confidential binding arbitration in the City of San Mateo, Northern California* for the maximum judgment enforceable, except that to the extent you have in any manner violated or threatened to violate our intellectual property rights, we may seek injunctive or other appropriate relief in any state or federal court in the State of California and we each waive the right to a jury trial. You hereby consent to, and waive all defenses of lack of personal jurisdiction and forum non conveniens with respect to venue and jurisdiction in the state and federal courts of California. *Arbitration under this Agreement shall be conducted pursuant to the existing Commercial Arbitration Rules at the American Arbitration Association.* The arbitrator's award shall be final and binding and may be entered as a judgment in any court of competent jurisdiction. *We each agree that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action.* If for any reason a claim is initiated in court rather than in arbitration we each waive any right to a jury trial.

(Ex. A at Section 33.1) (emphases to body text added).

For the reasons set forth below, Mr. Ranalli's case must be stayed and submitted to arbitration; stayed via application of the primary jurisdiction of the Department of Revenue; or dismissed.

## II.  **STANDARD OF REVIEW**

### A.  *Motion to Dismiss Standard*

In considering a Motion under Fed. R. Civ. P. 12(b)(6), the United States Supreme Court both clarified and partially reformulated federal notice pleading principles in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Although the language "showing that the pleader is entitled to relief" in Fed. R. Civ. P. 8(a)(2) was often neglected, the *Twombly* Court held that this language is significant and must be followed:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations [citations omitted], *a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do*, see *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (on a motion to dismiss, *courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). Factual allegations must be enough to raise a right to relief above the speculative level*, see 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-236 (3d ed. 2004) (hereinafter Wright & Miller) ("*The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action*") . . .

*Twombly*, 550 U.S. at 555 (emphasis added). As further elaborated in a subsequent Supreme Court decision, *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), in order to withstand a Rule 12(b)(6) motion to dismiss, a complaint must set forth facts showing that a claim is "plausible." *Iqbal*, 556 U.S. at 679

In *Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008), the Third Circuit centered on the heightened emphasis in *Iqbal* that a plaintiff's conclusory or "bare bones" allegations will no longer survive a motion to dismiss. In a later decision, the Third Circuit provided a two-step analysis to be applied to motions to dismiss for failure to state a claim, "instructing that all civil complaints must contain 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (*citing Iqbal*, 556 U.S. at 678). As explained by *Fowler*:

> Therefore, after *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. *First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions*. Id. *Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief."* 129 S. Ct. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

*Id.*, 578 F.3d at 210-11 (emphases added).

The Third Circuit has further held that "in reviewing a Rule 12(b)(6) motion, it is well-established that a court should consider only the allegations of the complaint, matters of public record, and documents that form the basis of the claim." *Welch v. Bank of America*, 2014 U.S. Dist. LEXIS 17214 (W.D. Pa. 2014), *quoting M & M Stone Co. v. Pennsylvania*, 388 Fed. App'x 156, 160-161 (3d Cir. 2010); *see also McBride v. Warden of Alleg. Cnty. Jail*, 577 Fed. App'x 98, 99 (3d Cir. 2014). Documents which "form the basis for a claim" are those "integral to or explicitly relied upon in the complaint," thereby serving as a factual underpinning for plaintiff's theory of recovery. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

### B.  *Summary Judgment Standard*

In the alternative, this Court can consider Zazzle's Motion to Dismiss as a Motion for Summary Judgment. Federal Rule of Civil Procedure 12(d) provides that if on a Rule 12(b)(6) motion, matters considered to be outside the scope of the complaint are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56 governing motions for summary judgment.

Rule 56(a) provides, in pertinent part, that summary judgment should be granted where the record shows there could be no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *See, Rode v. Dellarciprete*, 845 F.2d 1195, 1199 (3d Cir. 1988). The moving party bears the initial burden of identifying for the court those portions of the record which demonstrate the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Northern Ins. Co. v. Aardvark Associates*, 942 F.2d 189, 194 (3d Cir. 1991). An issue is genuine only if there is sufficient evidentiary basis on which a reasonable jury could not find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Weldon v. Kraft, Inc.*, 896 F.2d 793, 797 (3d Cir. 1990).

The non-moving party must produce more than a mere scintilla of evidence in his favor and may not simply reassert factually unsupported allegations contained in his pleadings. *Celotex*, 477 U.S. at 325; *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1020 (3d Cir. 1990). A factual dispute is material only if it might affect the outcome of the lawsuit under governing law. *Anderson*, 477 U.S. at 248; *Jordan v. Berman*, 792 F. Supp. 380, 382 (E.D. Pa. 1992).

### III.    ARGUMENT

#### A.    *Plaintiff's Case Must Be Stayed or Dismissed Because Plaintiff Agreed to Arbitrate His Individual Claim.[2]*

This Court should stay or dismiss Ranalli's case because Ranalli previously agreed to submit any claims arising from his purchase of a Zazzle mask to individual arbitration in San Mateo, California. As Ranalli cannot dispute the validity or enforceability of the User Agreement's Dispute Resolution Clause, this Court must act in accordance with the Federal Arbitration Act and submit his individual claim to arbitration.[3]

The Federal Arbitration Act, 9 U.S.C. § 1, et seq. (the "FAA"), provides that a written arbitration provision contained in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA creates a body of federal substantive law of arbitrability, which is applicable to arbitration agreements and contracts that involve interstate commerce. *Perry v. Thompson*, 482 U.S. 483, 489 (1987). The United States Supreme Court has repeatedly held that the "'principal purpose' of the FAA is to 'ensur[e] that private arbitration

---

[2] The Third Circuit explicitly rejects the practice of bringing motions to compel arbitration under 12(b)(3) and requires that motions to compel arbitration should be made under Rule 12(b)(6). *Palko v. Airborne Express, Inc.*, 372 F.3d 588, 597–98 (3rd Cir. 2004).

[3] Courts in the Third Circuit have the option of dismissing or staying cases while compelling arbitration pursuant to a valid and enforceable arbitration agreement. *See, R&C Oilfield Servs, LLC v. Am. Wind Transp. Grp., LLC*, 447 F. Supp. 3d 399, 350 (W.D. Pa 2020); *Werner v. Securitas Sec. Servs. USA Inc.*, 2014 WL 5585771, at *2 (W.D. Pa. Nov. 3, 2014).

agreements are enforced according to their terms.'" *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 344 (2011) (*quoting Volt Info. Scis. v. Bd. of Trustees*, 489 U.S. 468, 478 (1989)); *see also Stolt-Nielsen S.A. v. Animal Seeds Int'l. Corp.*, 559 U.S. 662, 681-682 (2010).

Under the FAA, the Court must compel arbitration if it finds that a valid arbitration agreement exists between the parties and the claim at issue falls within the scope of the agreement. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626-28 (1985). The Act requires the Court to engage "in a limited review to ensure that the dispute is arbitrable -- i.e., that a valid agreement to arbitrate exists between the parties and that this specific dispute falls within the substantive scope of that agreement . . ." and where "the court determines that an agreement exists and the dispute falls within the scope of that agreement, it then must refer the matter to arbitration without considering the merits of the dispute." *PaineWebber, Inc. v. Hartmann*, 921 F.2d 507, 511 (3d Cir. 1990). Notably, when evaluating a motion to compel arbitration, the Third Circuit has specifically instructed that the court need not – and indeed should not – consider the merits of the plaintiff's claim. *See, e.g., AT&T Technologies, Inc. v. Comm. Workers of Am.*, 475 U.S. 643, 649-50 (1986); *Rite Aid of Pennsylvania, Inc. v. United Food and Commercial Workers' Union, Local 1776*, 595 F.3d 128, 131-32 (3d Cir. 2010). Rather, the focus of the court's inquiry is whether a valid arbitration agreement exists and, if so, whether the dispute falls within the scope of such agreement. *See PaineWebber, Inc.*, 921 F.2d at 511. Should Ranalli oppose arbitration, he "bears the burden of demonstrating that the arbitration agreement is invalid or does not encompass the claims at issue." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000).

The Supreme Court of the United States has repeatedly held that any doubt as to whether arbitration is appropriate should be resolved in favor of arbitration. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 526 (3d Cir. 2009) (quoting *AT&T Techs. v. Communs.*

*Workers of Am.*, 475 U.S. at 650.  Federal law strongly favors the arbitration of disputes, and requires that Courts rigorously enforce arbitration agreements. *Buckeye Check Cashing v. Caregna*, 546 U.S. 440, 443 (2006)); *see also, Puleo v. Chase Bank USA, N.A.*, 605 F.3d 172, 178 (3d Cir. 2010) ("The FAA . . . establish[es] a strong federal policy in favor of the resolution of disputes through arbitration) (internal citations omitted).

Zazzle's User Agreement clearly states that by choosing to use its websites, mobile sites, marketplace listings, applications – whether owned or operated by Zazzle or on Zazzle's behalf - the user agrees to be subject to the terms and conditions set forth in the Agreement.  (Ex. A, at Section 1.1).  Included among these terms is Section 33, titled "Dispute Resolution and Release." (*Id.* at Section 33.1).  The Dispute Resolution Clause plainly expresses that "[a]ny dispute relating in any way to your visit to the Site or to the Products you purchase through the Site shall be submitted to confidential binding arbitration in the City of San Mateo, Northern California."  (*Id.*). The basis for Ranalli's claims against Zazzle are that he purchased a face mask.  This clearly falls within the scope of the arbitration provision.

In addition to agreeing to submit his claims to arbitration, Ranalli agreed "that any dispute resolution proceedings will be conducted ***only on an individual basis and not in a class***, consolidated or representative action." (*Id.*) (emphasis added).  The United States Supreme Court has specifically declined to invalidate arbitration agreements that include class action waivers, and has instead found that such waivers are themselves valid and enforceable.  In *AT&T Mobility*, 2011 U.S. LEXIS 3367 (2012), the Supreme Court upheld the enforceability of class action waivers, finding that "[r]equiring the availability of class wide arbitration interferes with fundamental attributes of arbitration and thus, creates a scheme inconsistent with the FAA."  The Court further found that the inclusion of a class action waiver in an arbitration agreement does not invalidate or render the provision unenforceable.  *Id.* at **15-17.  The Third Circuit had reached a similar

10

conclusion in *Gay v. CreditInform*, 511 F.3d 369, 387 (3d Cir. 2007), reiterating that the right to a class action may be waived, and declining to invalidate the arbitration provision and class action waiver. *See also Johnson v. West Suburban Bank*, 225 F.3d 336 (3d. Cir. 2000). The Third Circuit subsequently revisited the issue after the *AT&T Mobility v. Concepcion* decision, holding that the Third Circuit must follow the *AT&T Mobility v. Concepcion* decision and declaring that arbitration provisions and class waivers which must be enforced were present in consumer contracts. *Homa v. Am. Express Co.*, 494 Fed. Appx. 191, 195-7 (3d Cir. N.J. 2012).

There is no doubt that Ranalli's claims are subject to the arbitration provision found within the Zazzle User Agreement. His case must be dismissed or stayed and his individual claim submitted to the arbitration.

> **B.       Alternatively, Plaintiff's Case Must Be Stayed as the Pennsylvania Department of Revenue Has Primary Jurisdiction Over Claims Made Under the Tax Code.**

Even if this Court declines to enforce the Dispute Resolution Clause, it must still stay the case as the Department of Revenue has primary jurisdiction over Ranalli's claims relating to the assessment and collection of sales tax. Ranalli's allegations are that Zazzle improperly charged and collected sales tax in violation of the Tax Code. He bases his individual and class counts against Zazzle upon this alleged violation. Pertinent to Ranalli's allegations are questions as to the intended effect of the Department of Revenue's posted answer to a website question, whether the Department believes that individuals who were assessed a sales tax while purchasing face masks or protective coverings are owed a refund, and upon which date were entities no longer allowed to assess and collect a previously-acceptable sales tax. Despite basing his allegations upon provisions of the Tax Code, Ranalli has failed to follow the administrative process for seeking a remedy under the Code set forth in other sections of the same statute. Pennsylvania law requires that he do so before this Court exercise jurisdiction over his claims.

The Pennsylvania Superior Court provides guidance in a factually analogous matter, *Stoloff v. The Neiman Marcus Grp., Inc.*, 24 A.3d 366 (Pa. Super. 2011). In *Stoloff*, plaintiff brought a class action complaint following an online purchase of a "black jersey dress" from a Neiman Marcus catalog. *Stoloff*, 24 A. 3d at 367-68. Stoloff alleged that Neiman Marcus improperly charged a 6% sales tax on the dress despite the dress being exempt from Pennsylvania sales tax via operation of the Tax Code. *Id.* at 368. Stoloff's class action complaint alleged breach of contract, unjust enrichment, violation of the consumer protection law, and conversion, in addition to seeking injunctive relief. *Id. Stoloff* involves a similar factual claim as that brought by Ranalli and many of the same provisions under the Pennsylvania Tax Code.[4] After the trial court dismissed the complaint for lack of subject-matter jurisdiction following preliminary objections, Stoloff appealed to the Superior Court. *Id.* While the Superior Court reversed on the basis that dismissal for lack of subject-matter jurisdiction was improper, in doing so it held that "any dispute involving the payment of sales tax must first be resolved by the Pennsylvania Department of Revenue…" *Id.* at 367.

The *Stoloff* Court drew a distinction between the trial court's decision that subject matter jurisdiction did not exist because Stoloff had failed to exhaust her administrative remedies, with the Department of Revenue's primary jurisdiction over disputes involving the payment of sales tax. *Id.* at 370-372. Noting this distinction, the Court stated "…the doctrine of primary jurisdiction holds that where an agency has been established to handle a particular class of claims, the court should refrain from exercising its jurisdiction until the agency has made a determination." *Id.* at

---

[4] The *Stoloff* Court identified sections (1) 7202(a) - Imposition of tax; (2) 7204(26) - Exclusions from tax; (3) 7225 - Tax held in trust from the Commonwealth; (4) 7237 - Collection of tax; (5) 7252 – Refunds; and (6) 7253 - Refund petition as the implicated sections of the Pennsylvania Tax Code. *Id.* at 369-370. In the present matter, Ranalli alleges Defendants are liable due to their failure to comply with Section 7204(4) and 7204(18). (Complaint, ¶¶ 11-19).

371 (internal citations omitted). In its opinion, the Superior Court summarized the statutory framework for the assessment, collection, and refund of improperly assessed sales taxes. *Id.* at 371-374. It noted that Section 7225 provides that an entity that collected taxes must hold such taxes in a trust fund for the Commonwealth. *Id.* As such, once a consumer pays a sales tax, whether properly or improperly imposed, the sales tax effectively becomes the property of the Commonwealth. *Id.* at 373. The Superior Court determined that the Commonwealth is in the best position to determine if a sales tax was properly assessed as it customarily handles such claims. *Id.* (*citing Maryland Cas. Co. v. Odyssey Contracting Corp.* 894 A.2d 750 (Pa. Super. 2006). Finally, the *Stoloff* Court identified that Pa Tax Code Section 7273 mandates that a refund of a tax improperly collected cannot be authorized unless a petition for refund has been filed with the Department of Revenue. *Id.* The Superior Court reversed the trial court's decision but ordered the trial court to stay the action and refer the tax-refund issues to the Department of Revenue. *Id.* at 373-74.

As the *Stoloff* decision makes clear, Ranalli's claims are subject to a statutory framework that requires this Court to stay this case and refer the tax-refund issues to the Pennsylvania Department of Revenue. This may be particularly critical to Ranalli's dispute, as the *Stoloff* decision recognizes that staying a court case to allow for resolution of some disputed issues by the administrative agency charged with regulating the subject matter of the dispute is preferable to courts simply moving forward with the exercise of their jurisdiction over the claim. *Id.* at 371. The Department of Revenue will be able to provide Ranalli with a refund via a petition filed under Section 7273. The Department of Revenue will also be able to determine whether its answer posted to an online web question constitutes a formal position on the imposition of sales tax for face coverings, and what date this clarification (if any) was due to take effect. Even if this Court does not order the matter stayed or dismissed pending arbitration, it should follow the guidance of

13

the Pennsylvania Superior Court and stay this proceeding and direct Ranalli to comply with the Tax Code framework before it disposes of his remaining allegations.

### C.      Plaintiff's Class Claims Must be Dismissed via Operation of the Zazzle User Agreement.

Regardless of whether this Court elects to stay Ranalli's case pursuant to the User Agreement's arbitration provision or the Department of Revenue's exercise of primary jurisdiction, it must dismiss Ranalli's class action claims against Zazzle at this point. As discussed, *supra*, Ranalli agreed that his transaction would be governed by the User Agreement's Dispute Resolution and Release clause. (Ex. A, Sections 1.1 and 33.1). As the Dispute Resolution clause is valid and enforceable, the agreement between Zazzle and Ranalli "that any dispute resolution proceedings will be conducted only on an individual basis and not in a class, consolidated or representative action[.]" must be enforced. (*Id.*). Ranalli is prohibited from bringing forth his class action claims and each Count of his Complaint which sets forth a class claim on behalf of a putative class against Zazzle must be dismissed.

### D.      Plaintiff's Claims Must be Dismissed via Application of the Voluntary Payment Doctrine.

Ranalli was aware of, and voluntarily paid, the sales tax that is now the basis of his individual and class UTPCPL, PFCEUA, conversion, and unjust enrichment claims. His claims are therefore barred entirely via application of the voluntary payment doctrine. The voluntary payment doctrine is based on the common law doctrine that "one who voluntarily pays money with full knowledge of the facts, without any fraud having been practiced upon him, cannot recover it back." *Ochiuto v. Prudential Ins. Co.,* 52 A.2d 228, 230 (Pa. 1947). In Pennsylvania, "[w]here, under a mistake of law, one voluntarily and without fraud or duress pays money to another with full knowledge of the facts, the money paid cannot be recovered." *Acme Markets, Inc. v. Valley View Shopping Ctr., Inc.,* 493 A.2d 736, 737 (Pa. Super. Ct. 1985). "A mistake of law occurs where a person is truly

acquainted with the existence or nonexistence of the facts, but is ignorant of, or comes to an erroneous conclusion as to, their legal effect." *Id.*

The rule has been recognized and applied by the Third Circuit. *See In re: Resorts Int'l, Inc.,* 181 F.3d 505, 511-12 (3d Cir. 1999) (payments made voluntarily were not recoverable under New Jersey law). For example, in *Corporate Aviation Concepts, Inc. v. Multi-Service Aviation Corp.,* No. 03-3020, 2005 WL 1693931 (E.D. Pa. July 19, 2005), plaintiff's unjust enrichment claim was dismissed under Rule 12(b)(6) because the claim was barred by the voluntary payment doctrine. Specifically, the court determined that the plaintiff "had an adequate legal remedy at the time it paid off [the challenged] lien claims because it could have filed a lawsuit similar to the instant action seeking a declaratory judgment that the lien claims at issue were invalid." *Id.* at *5. The plaintiff's failure to challenge through litigation the subject liens before paying them precluded it from subsequently filing suit for return of its payments. *Id.*

In *Acme Markets,* the Pennsylvania Superior Court held the plaintiff, a tenant of a shopping center, could not recover payments it had made to its landlord for maintenance of the parking lot. The plaintiff contended it had made the payments because it mistakenly believed it had a continuing contractual obligation to maintain the lot, when, in actuality, its lease required maintenance contributions only during an initial term. The court observed that "[i]f this interpretation was erroneous, the mistake was one of law. Payments made pursuant to a mistake of law cannot be recovered." *Id.* 493 A.2d at 738.

The Pennsylvania Supreme Court has repeatedly held that the voluntary payment doctrine bars recovery of erroneous or mistakenly made tax payments unless specifically authorized by statute. *See, e.g., Universal Film Exchs., Inc. v. Bd. of Fin. & Revenue,* 185 A.2d 542, 544-45 (Pa. 1962) ("If payment of taxes is voluntary, even though the taxing statute is later held unconstitutional, the money paid cannot be recovered in the absence of statutory authorization.").

"At common law a voluntary payment of taxes, erroneously made, could not, in the absence of a statute, be recovered." *In re Royal McBee Corp. Tax Case,* 143 A.2d 393, 395 (Pa. 1958). To that end, the Pennsylvania General Assembly established the statutory refund procedure as a means to recover taxes voluntarily paid. *See* 72 P.S. § 7252; *id. § 7253(a)* ("[T]he refund or credit of tax . . . shall be made only where the person who has actually paid the tax files a petition for refund with the department."). It is critical to again note that Ranalli has not elected to be made whole via pursuit of the statutory framework which would – should his disputed assertions be accepted – refund him for the sales tax he was charged by Zazzle.

Ranalli may avoid dismissal via the voluntary payment doctrine only by alleging that he paid the sales tax "without full knowledge of the facts, or because of the other party's fraud, or under some type of duress." *Williams,* 2013 U.S. Dist. LEXIS 38897, at *8. Here, aside from the legal conclusions that Ranalli presents, Ranalli's factual allegations demonstrate that Zazzle disclosed all relevant facts, including the purchase price of the face masks and the amount of sales tax collected. "Under the voluntary payment defense, 'one who has voluntarily paid money with full knowledge, ***or means of knowledge of all the facts***, without any fraud having been practiced upon him . . . cannot recover it back by reason of the payment having been made under a mistake or error as to the applicable rules of law.'" *Liss,* 983 A.2d at 661 (emphasis added) (citation omitted).

Ranalli cannot avoid the consequence of his voluntary payment of the tax by claiming that the tax was improper. Even if Ranalli's allegations that the tax assessment was improper are successful, something Zazzle disputes, a tax payment made with knowledge of the facts is voluntary even if there was a mistake of law. *See Kirk,* 620 F. Supp. at 460 ("[M]oney voluntarily paid on a mistake of law cannot be recovered on the ground that the party supposed he was bound in law to pay it when in truth he was not."). Where, as here, "one voluntarily and without duress or fraud pays

16

money to another with full knowledge of the facts, the money paid cannot be recovered." *Id.* at 461.

The analysis of the voluntary payment doctrine's application to Ranalli's claims must be informed by a reminder of the facts upon which Ranalli brings his claims against Zazzle and all Defendants. Ranalli alleges that Pennsylvania was subject to an emergency order from March 6, 2020 onwards due to the COVID pandemic. On October 30, 2020 the Department of Revenue posted an online answer to a user-submitted question stating that, because masks and protective face coverings could be considered everyday wear due to the pandemic, they should be exempt from sales tax. Ranalli further alleges that he purchased masks or face coverings from the Defendants and paid sales tax as part of each transaction. He does not provide specific details of each purchase other than the price and sales tax paid. Other than legal conclusions, he provides no factual allegations whatsoever of statements made, advertisements read, or representations conveyed by Zazzle or the Defendants. Put simply, all the facts that form the basis of Ranalli's claims in his Complaint - and that are subject to Zazzle's Motion to Dismiss - were known to Ranalli and Zazzle at the time he chose to pay the sales tax. As Pennsylvania law is clear that the voluntary payment doctrine bars the recovery of erroneously – but voluntarily made – tax payments, all of Ranalli's claims must be dismissed.

**E.    *If Plaintiff's Case is Not Stayed, Any Claim Must be Limited in Time to Transactions Taking Place on or After October 30, 2020.***

Should this Court not dismiss or stay Ranalli's claim, then at the very least it must dismiss all claims based upon any transaction taking place prior to October 30th, 2020. In Pennsylvania, there is a strong presumption against retroactively applying new statutes. 1 Pa.C.S. § 1926 ("No statute shall be construed to be retroactive unless clearly and manifestly so intended by the General Assembly."). Despite this, Ranalli seeks to hold Zazzle and all Defendants liable for conduct

beginning on March 6, 2020 despite the Department of Revenue statement upon which he relies not being made until October 30, 2020.

Pennsylvania courts are consistent with their presumption against retroactivity. The intent that a statute act retroactively must be "so clear as to preclude all question as to the intention of the legislature." *R & P Services, Inc. v. Com., Dept. of Revenue*, 541 A.2d 432, 434 (Pa. Cmwlth. 1988). The presumption against retroactivity has been applied to the regulations of administrative agencies such as the Department of Revenue. *See, Jenkins Unemployment Compensation Case*, 56 A.2d 686 (Pa. Super. 1948). Administrative agencies may only adopt retroactive regulations "so long as they do not destroy vested rights, impair contractual obligations or violate the principles of due process of law and ex post facto laws." *Ashbourne School v. Department of Education*, 403 A.2d 161 (Pa. Cmwlth. 1979).

In *Mack Trucks, Inc. v. Commonwealth of Pennsylvania*, the Commonwealth Court of Pennsylvania upheld the presumption against the retroactive application of a tax assessment provision relating to the commercial operations of an engine producing company. *Mack Trucks, Inc. v. Commonwealth*, 629 A.2d 179, 180-81 (Pa. Cmwlth. 1993). Mack Trucks appealed from the Commonwealth Court's order affirming the orders of the Board of Finance and Revenue assessments of sales and use taxes on Mack Trucks' business. *Mack Trucks*, 629 A.2d at 179-180. Mack Trucks argued that an amendment which was enacted after the assessment period should have been applied retroactively to include the remanufacture of new engines from old components. *Id.* at 180. Mack Trucks further asserted that the amendment was a clarification of the existing tax exclusion. *Id.* The *Mack Trucks* Court noted that Mack Truck's argument was erroneous because it implied that the clarification made the application of the particular exclusion provision retroactive. *Id.* at 180. Declining to follow this interpretation, the *Mack Trucks* Court reiterated that statutes are not retroactive unless clearly and manifestly intended to be so by the General

Assembly.   1 Pa.C.S. § 1926; *Bureau of Employment Security v. Pennsylvania Engineering Corporation*, 421 A.2d 521, 523 (Pa. Cmwlth. 1980).

Turning to the instant matter, there can be no argument made by Ranalli that the Department of Revenue intended the answer it posted to an online question to have any retroactive effect whatsoever.  As an initial matter, the nature of the post itself cautions against any retroactive effect.  An informal answer to a user-generated question posted on a website in a Frequently Asked Questions section does not "preclude all question as to the intent" of the Department of Revenue.  Further, Ranalli's Complaint does not include any citation to a notice, decision, or statute set forth by the Department of Revenue, a judicial body, or the General Assembly which would support any claim that the October 30th, 2020 online post was intended to have retroactive effect.  There is no reference in the online post to a start date, nor reference to Governor Wolf's emergency declarations.  Accordingly, it would be impossible to tell which date the Department intended the online posting to refer back to.  This is particularly problematic as finding that the online post was intended to have retroactive effect would clearly "destroy vested rights, impair contractual obligations or violate the principles of due process of law and ex post facto laws" as cautioned against by Pennsylvania courts.  It would do so with absolutely no guidance as to the date by which the rights and obligations of individuals would be impacted.  Ranalli makes claims for individual liability, as well as defines his proposed classes against the Defendants, upon an assumption that an informal online post would have retroactive effect.  There is no allegation in the Complaint or indirectly referenced by the Complaint to support such a conclusion and to allow Ranalli's claims the benefit of that assumption contradicts Pennsylvania law.  As such, Ranalli's claims for any conduct made prior to October 30, 2020 must be dismissed and his proposed class definitions – to the extent his class claims still survive - must be limited in time.

**F.        *Plaintiff Fails to State a Claim Under the UTPCPL.***

Ranalli cannot establish the essential elements of his claims under the UTPCPL. First and foremost, the UTPCPL applies only to "trade or commerce" within the meaning of the statute. *See* 73 P.S. § 201-3(a). The UTPCPL cannot apply to the statutorily-required collection of sales tax and therefore Ranalli's claims under the UTPCPL fail as a threshold issue. Second, Ranalli must also establish an ascertainable loss as a result of Zazzle's allegedly unfair or deceptive conduct. *See Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 226 (3d Cir. 2008). He cannot do so because – should his assertions be correct – he is entitled to a full refund from the Department of Revenue that he has elected not to pursue. Finally, Ranalli's Complaint is wholly devoid of facts as to the circumstances surrounding the transaction between Ranalli and Zazzle. Ranalli's Complaint contains three factual statements relating to the amount of money charged by Zazzle and nothing else. Ranalli must allege, under Federal pleadings standards, that "the defendant was engaged in unfair methods of competition and unfair or deceptive acts or practices." *See Fazio v. Guardian Life Ins. Co. of Am.,* 62 A.3d 396, 409 (Pa. Super. Ct. 2012) (internal quotation marks and citation omitted). A cursory review of Ranalli's Complaint demonstrates the extent to which he has failed to do so. As such, his UTPCPL claim against Zazzle fails as a matter of law and must be dismissed.

1.   The Assessment of Sales Tax Is Not "Trade or Commerce" and
     Therefore Is Outside the Scope of the UTPCPL.

Ranalli's claims under the UTPCPL fail as the act does not cover the assessment and collection of taxes pursuant to the statutory framework which he alleges is the basis for Zazzle's liability. The UTPCPL applies only to "unfair or deceptive acts or practices ***in the conduct of any trade or commerce.***" 73 P.S. § 201-3(a) (emphasis added); *Fazio,* 62 A.3d at 410 (explaining plaintiffs must "establish a consumer transaction in order to fall under the auspices of the UTPCPL"); *see also Dameshek v. Encompass Ins. Co. of Am.,* No. 11-0018, 2012 U.S. Dist. LEXIS 87570, at *24 (M.D. Pa. June 25, 2012); *Gywnedd Club Condo. Ass'n v. Dahlquist,* 208 A.3d 213 (Pa. Commw Ct. 2019). "Trade or commerce" is defined as commercial activity for profit. *See*

*Meyer v. Cmty. Coll. of Beaver Cty.,* 93 A.3d 806, 816 (Pa. 2014) (Castille, C.J., concurring). Where, as here, a retailer is acting as a mere agent of the Commonwealth and "carrying out a public duty, it is not engaged in the conduct of a trade or commerce." *Meyer,* 93 A.3d at 816 (internal quotation marks and citation omitted); *see also 220 W. Rittenhouse Square Condo. Ass 'n v. Stolker,* No. 2254, 2012 Phila. Ct. Com. Pl. LEXIS 142, at *10 (May 16, 2012) ("[T]here can be no sale of services to constitute . . . being engaged in 'trade or commerce' when [the] performance of services is statutorily required.").

A retailer collects sales tax as an agent of the Commonwealth because it is statutorily required to do so. 72 P.S. § 7237(b)(1) ("Every person maintaining a place of business in this Commonwealth and selling or leasing tangible personal property or services . . . the sale or use of which is subject to tax shall collect the tax from the purchaser or lessee at the time of making the sale or lease, and shall remit the tax to the department"); *see also Aldine Apartments, Inc. v. Commonwealth, Dep't of Revenue,* 379 A.2d 333, 336 (Pa. Commw Ct. 1977) (holding that the utility companies that were alleged to have improperly collected sales tax were *"merely collecting agents* and, legally, [could] play no role in the refund of these taxes" (emphasis added)). Retailers briefly hold the tax in trust and promptly remit it to the Commonwealth. 72 P.S. § 7225 ("All taxes collected . . . shall constitute a trust fund for the Commonwealth."); *id. § 7217(a)(2)—(4)* (requiring monthly remittance). Thus, the collection of sales tax is not considered trade or commerce under the UTPCPL.

The Supreme Judicial Court of Massachusetts provides persuasive guidance in a 2009 ruling that the collection of sales tax is not commercial activity, and therefore is outside the scope of, a substantively similar consumer protection statute. In *Feeney v. Dell,* the plaintiffs brought a class action against a retailer-defendant for allegedly violating the Massachusetts consumer protection law by charging sales tax on optional service contracts when no sales tax was due. 908

N.E.2d 753, 757 (Mass. 2009). The Supreme Judicial Court of Massachusetts dismissed the plaintiffs' claims because the "collection of such tax was not motivated by 'business or personal reasons' but was pursuant to legislative mandate" and was not "commercial" activity according to the statute. *Id.* at 770-71 ("Where a party's actions are motivated by legislative mandate, not business or personal reasons, this court has repeatedly held that [the consumer protection law] does not apply.") (internal quotation marks and citations omitted). Just as with Ranalli's UTPCPL claim, the plaintiffs in *Feeney* unsuccessfully sought to expand the consumer protection statute to an act which was outside its scope. Ranalli's UTPCPL claim must similarly be dismissed.

2.    Ranalli Has Not Suffered Any Ascertainable Loss.

Ranalli's UTPCPL claims also fail because he has not suffered an ascertainable loss, let alone any loss caused by any act committed by Zazzle. *See Corsale,* 412 F. Supp. 3d at 566 ("[T]he UTPCPL requires that a plaintiff show that he has suffered an 'ascertainable loss of money or property, real or personal.' (quoting 73 P.S. § 201-9.2(a))). Even if Ranalli's allegations are true, he would be entitled to a refund from the Department for the reasons described *supra* and would thus be made whole by following the statutory refund procedures set forth in the Tax Code. *See* 72 P.S. §§ 7252-53; *see, Lilian v. Commonwealth,* 354 A.2d 250, 252 (Pa. 1976) (explaining the statutory process that "provide[s] for the refunding of improperly assessed or paid sales taxes, and set[s] forth the procedure whereby such refunds may be obtained"). Ranalli has chosen not to seek the refund of what he claims was an incorrectly assessed sales tax. He is not entitled to merely rely on this voluntary, manufactured "loss" to support his claims for penalties under the UTPCPL and, for this reason, his UTPCPL claims must also be dismissed. *See Singh v. Wal-Mart Stores, Inc.,* No. 98-1613, 1999 U.S. Dist. LEXIS 8531, *26-27 (E.D. Pa. June 10, 1999) (holding that plaintiff did not suffer an ascertainable economic loss under the UTPCPL where he declined a full refund); *see also Homer v. Nationwide Mut. Ins. Co.,* No. 15-1184, 2016 U.S. Dist. LEXIS 114548, at *33 (W.D. Pa.

22

Aug. 26, 2016) ("Because [plaintiff] has not pled justified reliance or ascertainable loss, his UTPCPL claim will be dismissed."), *aff'd,* 722 F. App'x 200 (3d Cir. 2018).  Ranalli would not need to bring this lawsuit against Zazzle if he followed the statutory framework for obtaining a refund. The loss that he now bases his UTPCPL claims upon is one of his own making by refusing to seek such a refund and his claims under the UTPCPL must be dismissed.

### 3.     Ranalli's Complaint Is Devoid of Facts Sufficient to Plead a Cause of Action Under the UTPCPL.

Even if this Court decides that the assessment and collection of sales tax is within the ambit of the UTPCPL and Ranalli has suffered an ascertainable loss of Zazzle's making, it must dismiss his UTPCPL claims as his Complaint wholly fails to provide any factual allegations upon which to base a claim.  Other than identifying himself and Zazzle Inc. in Paragraphs 1 and 3 of his Complaint, Ranalli only includes the following three factual averments as to the purchase of the face mask from Zazzle:  1) Zazzle's advertised price for a protective face mask was $12.95; 2) Vince Ranalli was charged and paid $14.35; and Zazzle Inc. unlawfully charged Vince Ranalli $1.40 as a sales tax. (Complaint, ¶¶ 51-53).  In the entirety of the Complaint, there are no other factual averments whatsoever plead in support of any of Ranalli's claims.  *(See,* Complaint). Ranalli asserts legal conclusions, and alleges that Zazzle violated the UTPCPL, the PFCEUA, and committed conversion and unjust enrichment but he does not aver any facts upon which to base these assertions.  *(See,* Complaint).  Ranalli's Complaint does not include any factual allegations whatsoever as to any representation made by Zazzle or what Ranalli's understanding of such a representation was at the time of purchase.  *(See Generally,* Complaint).  Further, Ranalli's Complaint does not include any citations to any website, advertising, or public facing media produced by Zazzle. *(See Generally,* Complaint).

Ranalli alleges that Zazzle violated three subsections of the UTPCPL: 201-(4)(v), (ix), and (xxi). (Complaint, ¶ 54). Subsections (v) and (ix) "apply only to claims of false advertising" and require the plaintiff to show that "(1) a defendant's representation is false; (2) it actually deceives or has a tendency to deceive; and (3) the representation is likely to make a difference in the purchasing decision." *Seldon v. Home Loan Servs.,* 647 F. Supp. 2d 451, 466 (E.D. Pa. 2009) (internal citations omitted). Similarly, under Subsection (xxi), the catch-all provision, Ranalli must show that Zazzle committed "a deceptive act that is likely to deceive a consumer acting reasonably under similar circumstances." *Kerr,* 2018 U.S. Dist. LEXIS 189502, at *14. Even if the collection of sales tax were trade or commerce under the UTPCPL, which it is not, Ranalli has simply failed to allege ***any facts whatsoever*** to support his allegations that Zazzle engaged in fraudulent, deceptive, or unfair conduct. *See* 73 P.S. § 201-3(a) (addressing "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce"); *Kerr,* 2018 U.S. Dist. LEXIS 189502, at *15-16 (dismissing UTPCPL claim where the plaintiff "generally alleged elements under the UTPCPL without specific facts that would support the same").

Zazzle recognizes the impact of the recent *Gregg v. Ameriprise Fin., Inc.* decision on UTPCPL claims in Pennsylvania. As the Pennsylvania Supreme Court noted less than a month ago, under Subsection xxi's catch-all provision "deceptive conduct during a consumer transaction that creates a likelihood of confusion or misunderstanding and upon which the consumer relies to his or her financial detriment does not depend on the actor's state of mind." *Gregg v. Ameriprise Fin., Inc.*, 2021 WL 607486, at *9 (Pa. Feb. 17, 2021). However, regardless of the impact the *Gregg* decision will have on UTPCPL claims moving forward, it ***does nothing to change pleading requirements*** under the Federal Rules of Civil Procedure. As discussed *supra*, the Third Circuit provided a two-step analysis to be applied to motions to dismiss for failure to state a claim, "instructing that all civil complaints must contain 'more than an unadorned, the-defendant-

unlawfully-harmed-me accusation.'" *Fowler*, 578 F.3d at 210. Under *Fowler*, the factual and legal elements of a claim should be separated and the legal conclusions may be disregarded. *Id.* at 210-11. The District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief. This claim for relief must be shown with facts. *Id.*

Here, the Court cannot consider Ranalli's factual averments in support of his UTPCPL claims to be sufficient support to have plead a claim. Ranalli does not plead any facts as to when the purchase was made, how the purchase was made, whether the purchase was via Zazzle's website, a Zazzle application, or a Zazzle-affiliated third party website. He similarly fails to cite to any advertisement, any product literature, or even the name or model identifier of the mask in question. He simply states that the mask was listed at $12.95 and he paid $14.35. This is the sum total of factual allegations in the entirety of his Complaint. There is nothing in the Complaint that describes any conduct whatsoever that could be considered advertising under UTPCPL Subsections (v) and (ix). Nor is there any fact in the Complaint that describes any conduct whatsoever that could even be analyzed to be "deceptive conduct" which created a "likelihood of confusion or misunderstanding" under the new Pennsylvania decision governing Subsection xxi. Ranalli's UTPCPL claims must be dismissed.

### G.    *Plaintiff Fails to State a Claim Under the PFCEUA.*

This Court should dismiss Ranalli's PFCEUA claim because a sales tax is not a "debt" and Ranalli has failed to state a cause of action under the UTPCPL, the mechanism by which a cause of action under the PFCEUA must be brought. The PFCEUA prohibits unfair or deceptive acts or practices in the collection of debt. 73 P.S. ¶ 2270.2. A "debt" is defined as "[a]n actual or alleged past due obligation, claim, demand, note or other similar liability of a consumer. . ." 73 P.S. § 2270.3. As such, the PFCEUA applies only to prohibit certain collections activities on obligations

that are in default. 73 Pa. C.S. § 2270.4(5) (a "creditor may not use any false, deceptive or misleading representation or means in connection with the collection of any debt").

Further, the PFCEUA enforcement provision states that "[i]f a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of the [UTPCPL]." 73 P.S. ₱ 2270.5(a) (internal punctuations omitted). The PFCEUA does not provide individuals with a private right of action; rather, individuals must use the remedial provisions of the UTPCPL to obtain relief. *Mellish v. CACH, LLC*, 2020 WL 1472405, at *5 (W.D. Pa. 2020) (*citing Kaymark v. Bank of Am., N.A.* 783 F.3d 168, 182 (3d Cir. 2015) overruled in part on other grounds by *Obduskey v. McCarthy & Holthus LLP*, 139 S. Ct. 1029 (2019); *see also Hall v. Equifax Information Services, LLC*, 204 F. Supp. 3d 807, 810 (E.D. Pa. 2016) (*citing Benner v. Bank of America, N.A.*, 917 F. Supp. 2d 338, 359 (E.D. 2013). Accordingly, a Plaintiff must be able to state a claim under the UTPCPL to plead a cause of action under the PFCEUA. *Prukala v. Chase Bank, N.A.*, 2020 WL 5351042, at *3 (M.D. Pa. 2020) (*citing Kaymark, supra* and *Baldwin v. Monterery Fin. Servs., Inc.*, 2017 WL 4767696, at *6 (M.D. Pa. 2017).

Ranalli's claims under the PFCEUA fail as a matter of law. As a threshold matter, the collection of a sales tax at the point of sale cannot be considered a "debt" as defined by the statute because it is not a past due obligation. Consumers are not previously obligated to pay sales tax prior to the purchase of an item. Additionally, Zazzle cannot be considered a "creditor" or "debt collector" because it is not in the business of collecting "debts" on behalf of the Commonwealth. Zazzle is in the business of selling merchandise. It only acts to assess and collect sales tax to fulfill its statutory obligations as discussed *supra*. Finally, Ranalli's claims under the PFCEUA also fail as he has not stated a legitimate claim under the UTPCPL. The PFCEUA does not provide for a private cause of action and therefore fails as a result of the inapplicability of the UTPCPL to the

assessment of sales tax, Ranalli's failure to plead an ascertainable loss, and Ranalli's Complaint's failure to plead facts in support of a UTPCPL claim.

### H. *Plaintiff Fails to State Common Law Claims for Conversion & Unjust Enrichment.*

#### 1.   Plaintiff Fails to State a Common Law Claim for Conversion.

Ranalli fails to set forth a legally cognizable claim for conversion as he consented to the transaction for the face mask and Zazzle was required to impose the sales tax by the Commonwealth. Conversion, a common law tort under Pennsylvania law, is "the deprivation of another's right of property in, or use or possession of, a chattel, or other interference therewith, without the owner's consent and without lawful justification." *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 659 n. 3 (Pa. Super. 2000). Money is considered chattel and may be the subject of conversion, but only when the plaintiff had a property interest in the money at the time of the alleged conversion. *Kia v. Imaging Sciences Int'l*, 735 F. Supp. 2d 256, 270 (E.D. Pa. 2010); *see also Shonberger v. Oswell*, 530 A.2d 112 (Pa. Super. 1987).

The voluntary payment of fees prohibits and defeats a claim of conversion. In *Lawn v. Enhanced Serv. Billing, Inc.*, the Eastern District dismissed a plaintiff's conversion claim on the grounds the plaintiff willingly turned over payment to a vendor even in the face of allegations the plaintiff consented to the payment on fraudulent and misleading behavior on the part of the defendants. *Lawn*, 2010 WL 2773377, at *3. Moreover, the Eastern District held that "[e]ven though plaintiff may have lacked complete knowledge of to whom the money was ultimately going, the fact that the money was parted with willingly prevents defendant's actions from being classified as conversion." *Id.*

Additionally, a claim of conversion cannot be sustained in the face of lawful justification on the part of the asserted tortfeasor. *See Pioneer Commercial Funding Corp. v. American Financial Mortgage Corp.*, 855 A.2d 818, 827 (Pa. 2004), *cert. denied*, 544 U.S. 978 (2005).

Whether a defendant has acted without lawful justification is an element of a prima facie case of conversion, on which a plaintiff bears the burden of proof. When the defendant has lawfully come into possession of the personal property, the plaintiff's demand for the return of the personal property is an essential element of a conversion claim. *See Norriton East Realty Corp. v. Central-Penn Nat'l Bank*, 254 A.2d 637, 639 (Pa. 1969). Furthermore, a demand and refusal is an essential element of conversion. *PTSI v. Haley*, 71 A.3d 304, 314 (Pa. Super Ct. 2013).

Here, akin to the plaintiff in *Lawn*, Ranalli voluntarily consented to the payment of sales tax when he purchased the face mask. The fact Ranalli alleges his consent was due to fraudulent or misleading behavior by Zazzle (an allegation specifically denied) does not negate the fact he willingly parted ways with his $1.40. Moreover, Ranalli's conversion claim fails as the sales tax at issue became Commonwealth property – and not property belonging to Zazzle - once the taxes were collected by Zazzle. *Stoloff*, 24 A.3d at 373. In *Stoloff*, the Superior Court of Pennsylvania dismissed Stoloff's argument that Section 7225 stood for the proposition that "private parties have a duty to refund improperly collected taxes". *Id.* at 327. Rather, as indicated above, the Superior Court interpreted Section 7225 to mean that an entity that collected taxes must hold such taxes in a trust fund for the Commonwealth. *Id.* Once a consumer pays a sales tax, whether properly or improperly imposed, the sales tax effectively becomes the property of the Commonwealth. *Id.* at 373. Accordingly, Zazzle never had possession of Ranalli's sales tax. Lastly, Ranalli chose to file this lawsuit rather seek a refund of his alleged improperly assessed sales tax from the Department of Revenue, the entity that is in possession of the disputed funds. Accordingly, Ranalli wholly fails to assert a cognizable claim for conversion against Zazzle.

2.   Plaintiff Fails to State a Common Law Claim for Unjust Enrichment.

Ranalli's claim for unjust enrichment fails as Zazzle did not retain the disputed sales tax. Unjust enrichment claims have historically been invoked following unconsummated or void

contracts. *Steamfitters Local Union No. 420 Welfare Fund v. Phillip Morris, Inc.*, 171 F.3d 912, 936 (3d Cir. 1999) (*citing Zvonik v. Zvonik,* 435 A.2d 1236, 1239-40 (Pa. Super. 1981)). Under such circumstances, the law implies a quasi-contract, requiring that the defendant compensate the plaintiff for the value of the benefit conferred. *Sevast v. Kakouras*, 915 A.2d 1147, 1153 n.7 (Pa. 2007) ("An action based on unjust enrichment is an action which sounds in quasi-contract or contract implied in law.") (citation omitted). In other words, the defendant makes restitution to the plaintiff *in quantum meruit. Hershey Foods Corp. v. Ralph Chapek, Inc.,* 828 F.2d 989, 998 (3d Cir.1987); *AmeriPro Search, Inc. v. Fleming Steel Co.*, 787 A.2d 988, 991 (Pa. Super. 2001) (citations omitted). In *Lawn v. Enhanced Serv. Billing, Inc.*, the Eastern District denied to extend the unjust enrichment doctrine to any and all tort claims with allegations of the "unjust" taking of another's chattels. *Lawn*, 2010 WL 2773377, at \*6. The *Lawn* court noted that there was no contract between plaintiff and defendants and no benefit was conferred to defendants stemming from any void or unconsummated contract. *Id.*

Here, no benefit was ever conferred to Zazzle when Ranalli paid $1.40 in sales tax. Again, it is vital to note that the sales tax at issue became the Commonwealth's property once the taxes were collected by Zazzle. *Stoloff, supra.* Moreover, there have been no allegations, nor can there be, that Zazzle retained the sales tax that it was legally required to hold in a trust for the Commonwealth. Lastly, there is no allegation that Ranalli did not receive the product he purchased from Zazzle. Accordingly, Ranalli has failed to set forth any facts which could suggest a claim for unjust enrichment.

### I.   *Plaintiff's Claim for Injunctive Relief is Moot as Zazzle No Longer Assesses Sales Tax on Masks or Protective Face Coverings Sold in Pennsylvania.*

Ranalli's final claim is one for injunctive relief. In Count XI of Ranalli's Complaint, he seeks an injunctive ruling enjoining all Defendants from continuing to assess and collect sales tax

on masks and face coverings.  This Count is moot as Zazzle no longer assesses or collects sales taxes on these products.  Accordingly, Count XI of Ranalli's Complaint must be dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Zazzle respectfully requests that this Court dismiss Plaintiff's case with prejudice, or, in the alternative, stay Plaintiff's case in accordance with the arguments set forth herein and in the Proposed Order of Court accompanying Zazzle Inc.'s Motion to Dismiss.

Respectfully submitted,

**MARSHALL DENNEHEY
WARNER COLEMAN & GOGGIN**

BY: _____

Gregory P. Graham, Esquire
Danielle M. Vugrinovich, Esquire
Michael D. Winsko, Esquire
**Counsel for Zazzle Inc.**